UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

AMRITPAL SINGH ATWAL,

Petitioner,

v.

KRISTI NOEM et. al.,

Respondents.

No.  1:26-cv-0542-DC-DMC (HC)

FINDINGS AND RECOMMENDATIONS

Petitioner, an immigration detainee who is represented by counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. See ECF No. 11.  Pending before the Court is Petitioner's amended petition for writ of habeas corpus, ECF No. 11. Respondents filed an answer, ECF No. 14, and Petitioner filed a reply, ECF No. 15.

**I. BACKGROUND**

Petitioner filed a motion for temporary restraining order, ECF No. 2, which the District Judge denied, finding Petitioner had been detained over 90 days prior to filing the motion and did not explain why he did not seek injunctive relief sooner. See ECF No. 10.

Petitioner asserts that he entered the Untied States around April 9, 2021, was then detained, charged as removable, and released on his own recognizance on April 12, 2021, pursuant to Section 236 of the Immigration and Nationality Act (INA). See ECF No. 11, pg. 4.

1

According to Petitioner, he was "re-detained at his routine scheduled check-in with ICE" on October 16, 2025. See id. Petitioner contends he did not violate any terms of his release, has "no criminal history, no disciplinary infractions, and no evidence suggesting he posed a danger to the community." Id. Petitioner argues his detention violates the INA, Due Process Clause of the Fifth Amendment, the Administrative Procedure Act, Equal Protection, the Suspension Clause, and the Accardi Doctrine. See id. at 10-16.

Respondents contend that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2)(A), and "looks to circumvent the detention statute under which he is rightfully detained to secure a custody redetermination hearing that he is not entitled to." ECF No. 14, pg. 4 According to Respondents,

> Because Petitioner's first NTA was never properly filed with the Immigration Court, jurisdiction proceedings before an Immigration Judge never started and jurisdiction never vested with the Immigration Judge. *See* 8 CFR § 1003.14(a); Policy Memorandum (PM 24-01), "Updated Guidance for Receipt of Notices to Appear Filed by the Department of Homeland Security" at 1-2. Because Petitioner was not initially placed in 8 U.S.C. § 1229a removal proceedings, he was subject to expedited removal once he was detained in 2025. So, even though he received a second NTA after a positive credible fear interview, he is detained under 8 U.S.C. § 1225(b)(2)(A), and ineligible for release or bond hearing under 8 U.S.C. § 1226(a).
>
> Id. at 3.

Respondents contend that Petitioner's detention was constitutionally proper because "[d]etentions under 8 U.S.C. § 1225(b) authority do not need warrants." Id. at 4. Additionally, Respondents argue that Petitioner has a right to Fifth Amendment due process but "Ninth Circuit interprets the Due Process Clause 'consistent with longstanding precedent recognizing that the process due noncitizens must account for the government's countervailing interests in immigration enforcement—considerations that do not apply to U.S. citizens.'" Id. at 6 (quoting Rodriguez Diaz v. Garland, 53 F.4th 1189, 1205-06 (9th Cir. 2022). Respondents assert that "Petitioner's detention is not indefinite" and "[t]he government's interest in protecting the public and preventing deportable non-citizens from fleeing are strong and compelling." Id. Thus, Respondents argue Petitioner "is receiving all the rights Congress provided him." Id. at 7.

///

2

## II. DISCUSSION

The undersigned finds that Petitioner has a protectable liberty interest in remaining out of custody, and he was deprived of this liberty without due process when re-detained without notice or a hearing.  Accordingly, the undersigned will recommend granting Petitioner's petition for writ of habeas corpus as to Petitioner's due process claims and order Petitioner immediately released from Respondents' custody under the same conditions he was released previously. Given this recommendation, the undersigned finds it is not necessary to consider Petitioner's remaining claims.

### A.    Due Process

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. Hernandez v. Session, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. Id. at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). The Court considers each step in turn.

As for the first step, the Court finds Petitioner has shown he has a protectable liberty interest. See Morrissey, 408 U.S. at 482. "Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032

3

(N.D. Cal. July 24, 2025). "Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'" Id. (quoting Morrissey, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen release from custody pending immigration proceedings has a protected liberty interest in remaining out of custody." Salcedo Aceros v. Kaiser, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." R.D.T.M. v. Wofford, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

As a preliminary matter, the Court finds Respondents' argument that Petitioner cannot assert a liberty interest because he is an "applicant for admission" under § 1225 and therefore subject to mandatory detention, ineligible for release, parole, or a custody redetermination hearing, unpersuasive. First, the facts support such a finding. When Petitioner was released on April 12, 2021, explicitly pursuant to Section 236 of the INA, ECF No. 1-1, pg. 10, which is codified by § 1226. Thus, the factual record supports finding that § 1226 is the applicable statute for Petitioner.

Next, Respondents contend that Petitioner is detained under 8 U.S.C. § 1225(b)(2)(A) but there is no evidence in the record that an immigration officer made the requisite determinations for § 1225(b)(2)(A) to apply – that Petitioner is seeking admission and not clearly and beyond a doubt entitled to be admitted. Following and adopting the reasoning of other courts, this Court finds Petitioner is not actively seeking lawful entry because he already entered the United States over a year ago. See Salcedo Aceros, 2025 WL 2637503, at *8 (collecting cases concluding that § 1225 applies only to noncitizens "seeking admission," a category that does not include noncitizens like Petitioner, living in the interior of the country.).

///

4

Respondents' proposed interpretation of the statute disregards the relationship between §§ 1225 and 1226 and would render the recent amendment to § 1226(c) superfluous. Lepe v. Andrews, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025). Specifically, and as many courts have discussed in length, if every "applicant for admission" is subject to mandatory detention under § 1225, there would have been no need for § 1226(c)(1)(E), which mandates detention for every noncitizen who is "present in the United States without being admitted or paroled" and who has been "charged with, arrested for, or admits to" committing certain crimes. 8 U.S.C. § 1226(c)(1)(E); Maldonado v. Olson, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *12 (D. Minn. Aug 19, 2025) ("The Court will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2).").

Indeed, prior to a July 2025 memorandum changing its' policy, the government consistently applied Section 1226(a), not Section 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal. See Rodriguez Diaz, 53 F.4th at 1196. This Court agrees with and joins the majority of courts nationwide, including the Eastern District of California, in rejecting Respondents' interpretation of Sections 1225 and 1226. See Rodriguez Vazquez v. Bostock, 2025 WL 2782499, at *1, 21-22 (W.D. Wash. Sept. 30, 2025) (concluding, after a thorough analysis, that "the government's [interpretation of § 1225] belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice"); J.Y.L.C. v. Bostock, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (collecting more than thirty cases rejecting the government's assertion that § 1225 empowers the DHS to arrest and hold a noncitizen present without legal status who has spent years in the U.S.); Cardona-Lozano v. Noem, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) ("Repeatedly, [district courts across the country] have found that DHS and the [Board of Immigration Appeals'] construction of the INA is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief.") (collecting cases); Faizyan v. Casey, 2025 WL 3208844, at *5 (S.D. Cal. Nov. 17, 2025) (holding that § 1226 applies to a petitioner who "DHS has consistently treated" as subject to discretionary detention

and "who has been residing in the United States for two years" (internal quotation marks and citation omitted)); Josue I.C.A. v. Lyons, 2025 WL 3496432, at *3 n.6 (E.D. Cal. Dec. 5, 2025) (collecting cases); Morales-Flores v. Lyons, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases) ("Courts nationwide, including this one, have overwhelmingly rejected respondents' arguments and found DHS's new policy unlawful.").

For these reasons, this Court rejects the government's contention that Petitioner is an "applicant for admission" subject to § 1225(b)(2) and finds that Petitioner is detained under 8 U.S.C. § 1226(a) and its implementing regulations because Petitioner has resided in this country for over four years since Petitioner was released into the United States on parole, until Petitioner was arrested and detained on October 16, 2025. Petitioner's re-detention on October 16, 2025, was not upon Petitioner's arrival to the United States.

As to whether there exists a protected liberty interest, the Court finds Petitioner was released from immigration detention, which created a reasonable expectation that he would be entitled to retain his liberty absent a material change in circumstances. Petitioner was initially released, which explicitly stated that Petitioner was "being released on your own recognizance provided you comply with the following conditions. . ." ECF No. 1-1, pg. 10.  Petitioner signed an acknowledgement which said: "If I do not comply with these conditions, the Department of Homeland Security may revoke my release without further notice."  Id. This language sets a clear and reasonable expectation that Petitioner would be entitled to retain his liberty absent a material change in circumstances. Respondents do not allege that Petitioner violated those conditions nor any change in Petitioner's asylum application status. Instead, Respondents seem to argue that due to a filing failure that Petitioner had no control over, he was never placed in § 1229a removal proceedings, and therefore he is subject to expedited removal and mandatory detention. See ECF No. 14, pg. 3 ("Because Petitioner's first NTA was never properly filed with the Immigration Court, jurisdiction proceedings before an Immigration Judge never started and jurisdiction never vested with the Immigration Judge. [citation omitted] Because Petitioner was not initially placed in 8 U.S.C. § 1229a removal proceedings, he was subject to expedited removal once he was detained in 2025"). The Court is not persuaded that the government's failure to file Petitioner's

6

NTA constitutes a change in circumstances. The Court also rejects Respondents' contention that the procedural defect with Petitioner's NTA, which was not the fault of Petitioner, is therefore the basis for Petitioner's mandatory detention or Petitioner's designation as being detained pursuant to § 1225.

Petitioner's detention goes against United States Supreme Court precedent which recognizes that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued release. See Morrissey, 408 U.S. 471 at 482. Given this, the Court finds Petitioner has established his liberty interest in his continued release.

### B. Procedural Due Process

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. To determine such, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews v. Eldridge, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Petitioner has established his due process rights were violated.

First, Petitioner has a substantial private interest in remaining free from detention. As discussed above, Petitioner has lived in the United States for over four years. Despite that, Petitioner has now been detained for over three months without being afforded a hearing. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. See Manzanarez v. Bondi, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly); see also Colina-Meira v. Lyons, No. 1:25-cv-1716 CSK P, 2025 LX 673205 (E.D. Cal. Dec. 31, 2025).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any bond or custody redetermination hearing. "[T]he risk of erroneous deprivation is high when, as here, parole is revoked without written notice or reason." Chavarria, 2025 WL

3533606, at *3; see also A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing."). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Respondents do not contend that Petitioner is or was a flight risk or a danger to the community. Thus, Court finds there is a serious likelihood Petitioner will be erroneously deprived of his liberty interest. Moreover, without any procedural safeguards to determine whether his re-detention was justifiable, the probative value of additional procedural safeguards is high. R.D.T.M., 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. See Garcia v. Andrews, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Respondents argue that Petitioner is not entitled to constitutional due process. This Court disagrees and finds the government has an interest in enforcing immigration laws but Respondents' interest in detaining Petitioner without notice or a hearing here is low. See Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025). Detention hearings in immigration courts are routine and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. Even if Respondents believed they had a proper reason to detain Petitioner, such decision on their part would warrant written notice and a pre-detention hearing rather than automatic detention. See E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process"). In addition, the government's interest is even lower because Petitioner was previously released after immigration officials determined he was not a flight risk or danger to the community, and there is no evidence that he has a criminal record.

/ / /

/ / /

8

On balance, the Court finds the Matthews factors weigh in favor of finding Petitioner is entitled to notice and a bond hearing, and Petitioner should have been provided such notice and a hearing before he was re-detained. The Due Process Clause requires that, at a minimum, "that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted). In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a pre-deprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases). Respondents identify no reason why written notice was not provided or why a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025).

Further, Respondents assert that "[t]he privileges of a noncitizen seeking entry into the United States are only available 'upon such terms as the United States shall prescribe' . . . '[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'" ECF No. 14, pg. 4 (quoting U.S. ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 542-544 (1950)). Here, Petitioner was released on April 12, 2021, "in accordance with section 236 of the Immigration and Nationality Act." ECF No. 1-1, pg. 10. Petitioner was provided terms for his release and informed that "[f]ailure to comply with the conditions of this order may result in revocation of your release and your arrest and detention by the Department of Homeland Security." Id. Respondent never alleges that Petitioner violated any of the conditions of his release. Indeed, Petitioner was detained when voluntarily complying with his annual check-in,[1] indicating Petitioner's adherence to such conditions. Thus, Petitioner was released pursuant to

---

[1] Notably, Respondents avoid admitting Petitioner was detained when presenting himself for a mandated check-in by stating: "[w]hen Immigration and Customs Enforcement ("ICE") officers next encountered Petitioner, on October 15, 2025 . . ." ECF No. 14, pg. 2. It appears that Respondents are carefully wordsmithing to avoid the truth that Petitioner's "encounter" with ICE

a congressional statute, Section 236 of the Immigration and Nationality Act, informed of the terms of his release, and abided by the terms prescribed. Respondent provided no reason for why such release should be revoked.

Thus, the undersigned finds Petitioner is entitled to relief as to his due process claims and will recommend granting Petitioner's petition for writ of habeas corpus.

### III. CONCLUSION

Based on the foregoing, the undersigned recommends:

1.      It is RECOMMENDED that Petitioner's petition for writ of habeas corpus, ECF No. 1, be GRANTED as Petitioner's detention violates due process;

2.      It is RECOMMENDED that Petitioner Amritpal S. Atwal be RELEASED IMMEDIATELY from Respondents' custody upon the same conditions as his prior release. Respondents shall not impose any additional restriction on him, such as electronic monitoring, unless that is determined to be necessary at a future pre-deprivation/custody hearing;

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

on October 15, 2025, was actually Petitioner complying with the terms of his release.  The Court additionally notes that there is a discrepancy between the dates (October 15 versus October 16) provided by parties, but finds such discrepancy has no bearing on the findings and recommendations herein.

3.    It is RECOMMENDED that Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven (7) day notice and a hearing before a neutral fact-finder where Respondents show: (a) there are material changed circumstances which demonstrate that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  Thus, within 7 days after being served with these findings and recommendations, any party may file written objections with the Court.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 11, 2026

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

11